UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

RICKY A. TAYLOR

      Petitioner,

                                Case No. 1:04-cv-28

v.

                                Hon. Wendell A. Miles

KURT JONES,

      Respondent.

_____/

REPORT AND RECOMMENDATION

      Petitioner, a prisoner currently incarcerated at a Michigan correctional facility, has filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.

I.      Background

      On January 12, 1999, Cheryl Russell was working at the Pri-Mart Petroleum gas station in Watervliet, Michigan. At approximately 9:00 p.m. that night, a man robbed the gas station. Petitioner was charged with the crime. At trial, petitioner denied that he committed the robbery, testifying that he was in Benton Harbor, Michigan at the time of the crime. Specifically, petitioner testified that he was at Frieda Green's house during the early evening hours and that he left her house "somewhere around 8:00 and 9:00 [p.m.]" to go visit Carolyn Sanders. Trial Trans. I at 207, 217. Petitioner testified that Ms. Green and Ms. Sanders lived approximately six blocks apart in Benton Harbor. *Id.* at 217. Petitioner testified that he was with Ms. Sanders "until somewhere between 2:30 and 3:00 [a.m.]," that she was a prostitute, that "money exchanged that night" and that they "did a couple different kinds of drugs." *Id.* at 208, 214.

Following a jury trial, petitioner was convicted of unarmed robbery, M.C.L. § 750.530, and sentenced to a term of 14 to 40 years' imprisonment as a fourth habitual felony offender pursuant to M.C.L. § 769.12. *People v. Taylor*, No. 220277 (Mich. App. March 20, 2001).

Petitioner raised three issues in his direct appeal to the Michigan Court of Appeals:

I.   Whether defendant was deprived of his right to due process and to a fair trial under the 14th Amendment to the United States Constitution and under Section 17, Article 1, Michigan Constitution 1963 when the trial court permitted the prosecution to adduce rebuttal evidence which was not rebuttal evidence?

II.  Whether defendant was deprived of his right to due process and to a fair trial under the 14th Amendment to the United States Constitution and under Section 17, Article 1, Michigan Constitution 1963 when the trial court permitted the jury to view the videotape of the crime without proper authentication?

III. Whether defendant was denied his right to effective assistance of counsel on trial under the 6th Amendment to the United States Constitution and under Section 20, Article 1, Michigan Constitution 1963 when his trial counsel failed and omitted to seek an evidentiary hearing prior to trial to challenge complainant's identification of [petitioner] on the basis of improper suggestions?

Petitioner filed a supplemental *pro se* brief raising six additional issues (in his words):

IV.  Whether defendant is entitled to a new trial, to where his trial attorney fail to adequately prepare, investigate and locate critical witness, denying him of his Sixth and Fourteenth Amendments rights guarantee him by the United States Constitution.

V.   Whether defendant was denied his right to his Sixth and Fourteenth Amendment under the United States and Michigan Constitution, when his defense counsel wave his sole alibi witness and abandon the alibi defense.

VI.  Whether defendant is entitle to a new trial to where his Sixth and Fourteenth Amendment rights guarantee him by the United States Constitution where violated when his trial attorney erroneously advice him on a clear point of law, and fail to suppress extremely prejudicial, and irrelevant evidence.

2

VII.    Whether defendant is entitle to a new trial to where his Sixth and Fourteenth Amendments to the United States Constitution was violated, when his propose alibi witness was compel to testify in jail clothes.

VIII.   Whether defendant was denied his constitution rights to a fair trial and due process of law by the prosecutor failure to disclose and endorse a res gestae witness.

IX.     Was defendant denied his constitution rights to a fair trial and due process of law by his trial attorney not discovering it was a res gestae witness until two (2) days before the trial, and then not seeking a continuance to locate him.

The Michigan Court of Appeals affirmed petitioner's conviction. *People v. Taylor*, No. 220277 (Mich. App. March 20, 2001). Petitioner filed a *pro se* delayed application for leave to appeal to the Michigan Supreme Court, which raised the same nine issues. The Michigan Supreme Court denied petitioner's application for leave to appeal for lack of merit in the grounds presented. *People v. Taylor*, No. 119129 (Mich. Oct. 29, 2001).

Petitioner filed a motion for relief from judgment pursuant to MCR 6.500 *et seq.*, which raised four additional issues:

I.      Whether defendant was denied his right to due process of law guaranteed him by the Fourteenth Amendment to the United States Constitution and his right to a fair and impartial jury trial guaranteed him by the Sixth Amendment to the United States Constitution, where his jury consisted of thirteen jurors.

II.     Whether defendant was denied his right to due process of law guaranteed him by the Fourteenth Amendment to the United States Constitution and his right to effective assistance of counsel and a fair trial both guaranteed him by the Sixth Amendment to the United States Constitution, where his trial attorney fail to file an ex-parte motion for a private investigator.

III.    Whether defendant was denied due process of law guaranteed him by the Fourteenth Amendment to the United States Constitution where (A) the prosecutor injected his opinion that there was no such defense as mistaken identity (B) the defendant economic and drug use was inadmissible and (C) the prosecutor vouching for the strength of the evidence is reversible error, the cumulative affects denied defendant a fair trial.

3

IV.   Whether defendant was denied of his right to due process of law guaranteed him by the Fourteenth Amendment to the United States Constitution and his right to the effective assistance of counsel guaranteed to him by the Sixth Amendment to the United States Constitution, where his appellate counsel failed to raise several meritorious claims of error on his direct appeal of right.

The trial court denied the motion for relief from judgment because petitioner's claims were barred from review pursuant to MCR 6.508(D)(2) and (3). *See People v. Taylor*, Berrien Circuit Court  Case No. 99-400166 FH (Opinion and order denying defendant's motion for relief from judgment) (Dec. 23, 2002).[1]  The Michigan Court of Appeals denied petitioner's application for leave to appeal the circuit court's order for failure to meet the burden of establishing entitlement to relief under MCR 6.508(D).  *People v. Taylor*, No. 245984 (Mich. App. May 21, 2003).  The Michigan Supreme Court also denied petitioner application for leave to appeal because he "failed to meet the burden of establishing entitlement to relief under MCR 6.508(D)."  *People v. Taylor*, No. 123993 (Mich. Oct. 31, 2003).

In his habeas corpus petition, petitioner states seven issues and ten sub-issues as grounds for habeas relief:

I.   Petitioner was denied of his right to due process of law guaranteed him by the Fourteen Amendment to the United States Constitution and his right to a fair and impartial jury trial guaranteed to him by the Sixth Amendment to the United States Constitution, where his jury consisted of thirteen jurors.

II.   Petitioner was denied his right to due process of law guaranteed by the Fourteenth Amendment to the United States Constitution and his right to effective assistance of counsel and a fair trial both guaranteed him by the Sixth Amendment to the United States Constitution, where his trial attorney committed numerous acts of substantial and material misconduct.

a.   Trial counsel was ineffective when he did not object and

---

[1] The record does not contain a copy of petitioner's motion for relief from judgment filed in Berrien Circuit Court.  The four issues presented appear in petitioner's appeal of the trial court's opinion and order denying petitioner's motion for relief from judgment.

4

erroneously advised petitioner that he could not object to the jury pool array, depriving him of a jury that represented a fair cross section of the community.

b.   Trial counsel was ineffective when he failed to prepare[,] investigate, and locate critical witness.

c.   Trial counsel was ineffective by failing to file an ex-parte motion for a private investigator.

d.   Trial counsel was ineffective in failing to call and waiving the only disinterested "alibi" witness for the defense.

e.   Trial counsel was ineffective when he erroneously advised petitioner on a clear point of law and failed to suppress extremely prejudicial evidence.

f.   Trial counsel was ineffective when he failed and omitted to seek and evidentiary hearing prior to trial to challenge complainant's identification of petitioner on the basis of improper suggestions.

III.   Petitioner was denied his right to due process of law guaranteed him by the Fifth and Fourteenth Amendments through both state and federal constitutions and his right to a fair trial guaranteed him by the Sixth Amendment to the United States Constitution, where the trial court erroneously allowed the proposed alibi witness for the defense to testify before the jury in state issue jail clothing.

IV.   Petitioner was deprived of his right to due process and to a fair trial under the 14th Amendment to the United States Constitution and under Section 17, Article 1, Michigan Constitution 1963 when the trial court permitted the prosecution to adduce rebuttal evidence which was not rebuttal evidence.

V.   Petitioner was denied his right to due process of law guaranteed by the Fourteenth Amendment to the United States Constitution and his right to a fair trial guaranteed him by the Sixth Amendment to the United States Constitution, when the prosecutor committed numerous acts of substantial and material misconduct.

a.   Prosecutorial misconduct occurred when the prosecutor impermissibly suggested to the jury pool, that there is no such defense as mistaken identity.

5

b. The prosecutor committed error when he improperly questioned defendant regarding bad acts, thereby putting petitioner's character at issue.

c. The prosecutor committed plain error when he vouched for the credibility of the videotape used at trial.

d. Petitioner was denied due process of law when the prosecutor failed to exercise due diligence in producing a material "res gestae" witness at trial.

VI. Petitioner was deprived of his right to due process and to a fair trial under the Fourteenth Amendment to the United States Constitution, when the trial court permitted the jury to view the videotape of the crime without proper authentication.

VII. Petitioner was denied his right to due process of law guaranteed him by the Fourteenth Amendment to the United States Constitution and his right to effective assistance of counsel guaranteed to him by the Sixth Amendment to the United States Constitution, where his appellate counsel failed to raise several meritorious claims of error on his direct appeal of right.

Petition at ¶¶ 7-13 and Petitioner's Memorandum of Law ("Memo").

## II.   Standard of review under 28 U.S.C. § 2254

Petitioner seeks relief under 28 U.S.C. §2254, which provides that "a district judge shall entertain an application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States."  Before petitioner may seek such relief in federal court, however, he must first fairly present the substance of his claims to all available state courts, thereby exhausting all state remedies.  *Picard v. Connor*, 404 U.S. 270, 277-78 (1981); *Clemmons v. Sowders*, 34 F.3d 352, 354 (6th Cir. 1994); *Rust v. Zent,* 17 F.3d 155, 160 (6th Cir. 1994); *see* 28 U.S.C. §2254(b)(1)(A).  Here, petitioner has exhausted his state remedies with respect to all of his habeas claims except for Issue II. a.  For the reasons stated below, Issue II. a. is

6

procedurally defaulted.

Where the state court has adjudicated a claim on its merits, the federal district court's

habeas corpus review is limited by the Antiterrorism and Effective Death Penalty Act of 1996

("AEDPA"), which provides in pertinent part that:

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication–

(1)  resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

A state court's decision is "contrary to" clearly established Federal law if the state

court arrived at a conclusion opposite to that reached by the Supreme Court on a question of law or

if the state court decided the case differently than a Supreme Court decision based upon a set of

materially indistinguishable facts.   *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000); *Lopez v.*

*Wilson*, 426 F.3d 339, 341 (6th Cir. 2005) (*rehearing en banc*).   An unreasonable application of

clearly established Federal law occurs "when the state court identified the correct legal principle

from the Supreme Court but unreasonably applied the principle to the facts of the case before it."

*Id.*

A determination of a factual issue by a state court is presumed to be correct.   28

U.S.C. § 2254(e)(1).   A habeas petitioner has the burden of rebutting the presumption of correctness

by clear and convincing evidence that the state court's determination was erroneous.   *Magana v.*

*Hofbauer*, 263 F.3d 542, 546-47 (6th Cir. 2001).

### III.     Procedural default

The doctrine of procedural default applies to the following issues: I, II.a., II.c., V.a., V.b. and V.c.  Where "a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claim will result in a fundamental miscarriage of justice." *Coleman v. Thompson*, 501 U.S. 722, 750 (1991).  A procedural default "provides an independent and adequate state-law ground for the conviction and sentence, and thus prevents federal habeas corpus review of the defaulted claim, unless the petitioner can demonstrate cause and prejudice." *Gray v. Netherland*, 518 U.S. 152, 162 (1996).  Not every state procedural rule will warrant application of the procedural default doctrine.  Only a procedural rule that was "'firmly established and regularly followed' by the time as of which it [was] to be applied," *Ford v. Georgia*, 498 U.S. 411, 424 (1991), will support application of the doctrine.

As an initial matter, petitioner never raised Issue II. a. in any state court proceeding. Because petitioner did not include this issue in his motion for relief from judgment, he cannot exhaust this issue in the state court.  Where a petitioner has failed to exhaust his state court remedies, but has no available remedy in the state courts, his claim is procedurally defaulted.  *See Rust*, 17 F.3d at 160.

Petitioner raised issues I, II.c., V.a., V.b. and V.c. in his motion for relief from judgment. However, the Michigan Supreme Court denied petitioner's application for leave to appeal these five issues because he "failed to meet the burden of establishing entitlement to relief under MCR 6.508(D)." *People v. Taylor*, No. 123993 (Mich. Oct. 31, 2003).  The Sixth Circuit has held

8

that MCR 6.508(D) is a valid procedural bar for habeas purposes. *See Canty v. Cason*, No. 02-2030, 2003 WL 152322 (6th Cir. Jan. 16, 2003); *Burroughs v. Makowski*, 282 F.3d 410, 414 (6th Cir. 2002); *Luberda v. Trippett*, 211 F.3d 1004, 1008 (6th Cir. 2000). Consequently, a habeas petitioner's claims are procedurally defaulted in those cases in which the Michigan Supreme Court expressly relies on MCR 6.508(D) in denying an application for leave to appeal. *Id.* A state procedural rule will support an application of the procedural default doctrine only if the rule was "firmly established and regularly followed" at the time it was applied. *Ford v. Georgia*, 498 U.S. 411, 424 (1991). "For a habeas claim to be procedurally defaulted on the basis of a state procedural rule, the petitioner must have violated a procedural rule, but the state court must also have based its decision on the procedural default." *Simpson v. Jones*, 238 F.3d 399, 407 (6th Cir. 2000).

As the last state court rendering judgment in the case, the Michigan Supreme Court's decision denying petitioner's claims on the basis of the state procedural bar of MCR 6.508(D) prevents habeas review. *See Burroughs*, 282 F.3d at 414; *Simpson v. Jones*, 238 F.3d 399, 407 (6th Cir. 2000). Accordingly, petitioner's procedural default precludes habeas review of issues I, II.a., II.c., V.a., V.b., and V.c., unless he can demonstrate "cause for the default and actual prejudice as a result of the alleged violation of federal law," or that a failure to consider the claim will result in a fundamental miscarriage of justice. *Coleman*, 501 U.S. at 750.

### A.     Cause and Prejudice.

In his reply brief, petitioner contends that his appellate counsel was ineffective for failing to raise Issue I. Reply at 2-3. He also claims in habeas Issue VII that his appellate counsel was ineffective for failing to raise eight additional claims on appeal. *See* Memo at 73-74. Petitioner states that appellate counsel did not adequately represent him on appeal, because counsel failed to

raise eight "obvious and significant" claims, while pursuing claims "which were weaker." *Id.* at 74.

Ineffective assistance of appellate counsel can be cause for a procedural default. *See Murray v. Carrier*, 477 U.S. 478, 488 (1986). However, appellate counsel enjoys a strong presumption that the alleged ineffective assistance falls within the wide range of reasonable professional assistance. *See Willis v. Smith*, 351 F.3d at 745, *citing Strickland v. Washington,* 466 U.S. 668 (1984). It is not necessary for appellate counsel to raise every non-frivolous claim on direct appeal. *Smith v. Murray*, 477 U.S. 527, 536 (1986); *Jones v. Barnes,* 463 U.S. 745 (1983). On the contrary, "[e]xperienced advocates since time beyond memory have emphasized the importance of winnowing out weaker arguments on appeal and focusing on one central issue if possible, or at most on a few key issues. *Jones*, 463 U.S. at 751-52. It is well-recognized that the effect of adding weak arguments to an appellate brief "will be to dilute the force of the stronger ones." *Id.* at 752, *quoting* R. Stern, *Appellate Practice in the United States* 266 (1981). "[I]f you cannot win on a few major points, the others are not likely to help, and to attempt to deal with a great many in the limited number of pages allowed for briefs will mean that none may receive adequate attention." *Id.* As a general rule, "only when ignored issues are clearly stronger than those presented, will the presumption of effective assistance of counsel be overcome." *Smith v. Robbins*, 528 U.S. 259, 288 (2000), *quoting Gray v. Greer,* 800 F.2d 644, 646 (7th Cir.1986).

The only ineffective assistance of appellate counsel claim that petitioner discusses in any detail relates to Issue I, in which he claims that he was convicted by 13 jurors. Specifically, petitioner contends that an alternate 13th juror deliberated in his verdict and that this was an error of constitutional magnitude that his counsel should have raised it on appeal. Reply at 2-3. The trial judge rejected petitioner's claims as unsupported. *See People v. Taylor*, Berrien Cir. Court No. 99-400166 FH (Opinion and order denying motion for relief from judgment (12/23/02) (docket no. 28). This court cannot determine from the trial record (which appears to contain some typographical errors) whether 12 or 13 jurors deliberated in this case. It is clear from the record that neither the trial judge, prosecutor nor defense counsel commented on this alleged procedural defect. However,

even if 13 jurors deliberated in this case, such an occurrence would not result in a constitutional violation as alleged by petitioner. There is no federal constitutional right to a jury consisting of 12 people. *Williams v. Florida*, 399 U.S. 78, 98 (1970) ("the 12-man requirement cannot be regarded as an indispensable component of the Sixth Amendment"). *See also, United States v. Olano*, 507 U.S. 725, 737 (1993) (prejudice is not presumed when alternate jurors are present during jury deliberation). Appellate counsel was not ineffective for failing to raise the 13th juror issue as a federal constitutional issue on appeal. *See Lilly v. Gillmore*, 988 F.2d 783, 786 (7th Cir. 1993) ("[t]he Sixth Amendment does not require counsel . . . to press meritless issues before a court").

Petitioner's remaining claims of ineffective assistance of appellate counsel consist of nothing more than conclusory claims. A bald assertion of ineffective assistance of appellate counsel does not demonstrate cause for petitioner's procedural default. *See Lundgren v. Mitchell*, 440 F.3d 754, 763-64 (6th Cir. 2006) ("[h]abeas petitioners cannot rely on conclusory assertions of cause and prejudice to overcome procedural default; they must present affirmative evidence or argument as to the precise cause and prejudice produced"). *See also Wilson v. United States*, 962 F.2d 996, 997 (11th Cir.1992) (conclusory allegations are insufficient to establish ineffective assistance of counsel); *United States v. Lawson*, 947 F.2d 849, 853 (7th Cir.1991) (same).

Accordingly, petitioner has failed to demonstrate cause for the procedural default. Petitioner's failure to demonstrate cause prevents federal review of his habeas claim unless the court's failure to do so will result in a "fundamental miscarriage of justice." *Coleman*, 501 U.S. at 750.

## B. Fundamental Miscarriage of Justice.

In *Schlup v. Delo*, 513 U.S. 298, 321 (1995), the Supreme Court described the fundamental miscarriage of justice exception as follows:

> To ensure that the fundamental miscarriage of justice exception would remain "rare" and would only be applied in the "extraordinary case," while at the same time ensuring that the exception would extend relief to those who were truly deserving, the Court explicitly tied the miscarriage of justice exception to the petitioner's innocence.

To meet the threshold requirement for actual innocence, a petitioner must persuade the court "that, in light of the new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt." *Id*. at 329. *See, e.g. Paffousen v. Grayson*, No. 00-1117, 2000 WL 1888659 *3 (6th Cir. Dec. 19, 2000) ("[I]n order to establish actual innocence a petitioner must show that it is more likely than not that no reasonable juror would have convicted him"). Evidence sufficient to establish actual innocence "normally consists of exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence that was not presented at trial." *Paffousen*, 2000 WL 1888659 at *3. Petitioner offers no new evidence that he is actually innocent of the crime for which he was convicted. Accordingly, he has failed to meet the fundamental miscarriage of justice exception. Having failed to meet the exception under *Coleman*, petitioner's claims I, II.a., II.c., V.a., V.b., and V.c. are procedurally barred and not subject to habeas review.

## IV.    Petitioner's claims

### A.    Ineffective assistance of counsel

First, petitioner contends that he was denied the effective assistance of counsel.[2] In *Strickland*, 466 U.S. at 687, the Supreme Court set forth a two-prong test to determine when ineffective assistance of counsel exists: (1) the defendant must show that counsel's performance was deficient and (2) the defendant must show that counsel's deficient performance prejudiced the defense, i.e., "that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." The reviewing court's scrutiny of counsel's performance is highly deferential, and the court is to presume that counsel rendered adequate assistance and made decisions with reasonable professional judgment. *Id.* at 689-690.

"The Constitution does not guarantee every defendant a successful defense." *Moran v. Triplett*, No. 96-2174, 1998 WL 382698 at *3 (6th Cir. 1998), *citing Strickland*, 466 U.S. at 690.

---

[2] The court notes that the Michigan Court of Appeals did not explicitly address all of petitioner's claims of ineffective assistance of trial counsel raised in his supplemental brief.

12

Neither does the Constitution guarantee petitioner "an excellent lawyer" or a "good lawyer." *Id.* at *5, *citing Strickland*, 466 U.S. at 687.   Rather, "the Sixth Amendment right to the effective assistance of counsel entitles [a criminal defendant] to nothing more than a 'reasonably competent attorney' whose performance falls 'within the range of competence demanded of attorneys in criminal cases.'" *Id.*  A trial counsel's tactical decisions are particularly difficult to challenge when claiming ineffective assistance of counsel. *See McQueen v. Scroggy*, 99 F.3d 1302, 1311 (6th Cir. 1996); *O'Hara v. Wiggington*, 24 F.3d 823, 828 (6th Cir. 1994).   Accordingly, petitioner must "overcome a presumption that the challenged action might be considered sound trial strategy." *Id.*

### Trial counsel failed to prepare, investigate and locate a critical witness (Issue II. b.)

Petitioner contends that counsel's investigation was deficient for three reasons.  First, counsel failed to contact Ms. Green "whom could have testified as to the time [p]etitioner left her house going to visit [Ms.] Sanders."  Memo at 19.  Second, counsel failed to call  "Coretta Conley to contradict [the victim's] testimony of knowing the [p]etitioner through her." *Id.*  Third, counsel conducted a flawed investigation of his alibi witness, Ms. Sanders. *Id.*   Petitioner does not address how counsel failed to investigate or locate Ms. Sanders.  On the contrary, Ms. Sanders was present and testified at petitioner's trial.  Trial Trans. I at 225-39.  Accordingly, this claim is limited to counsel's alleged failure to investigate Ms. Green and Ms. Conley.

Counsel's decision to call, or not to call, a particular witness is a strategic decision generally not subject to review. *United States v. Williams*, 106 F.3d 1362, 1367 (7th Cir. 1997). "The Constitution does not oblige counsel to present each and every witness that is suggested to him." *Id.*  "Decisions as to what evidence to present and whether to call or question witnesses are presumed to be a matter of trial strategy, and the failure to call witnesses or present other evidence can constitute ineffective assistance of counsel only when it deprives the defendant of a substantial defense." *Chegwidden v. Kapture*, 92 Fed.Appx. 309, 311 (6th Cir. 2003). *See Cathron v. Jones*, 77 Fed.Appx. 835, 841 (6th Cir. 2002) ("[u]nder *Strickland*, we must presume that decisions of what evidence to present and whether to call or question witnesses are matters of trial strategy").  A trial

13

counsel's tactical decisions are particularly difficult to challenge when claiming ineffective assistance of counsel. *See McQueen*, 99 F.3d at 1311; *O'Hara*, 24 F.3d at 828. Accordingly, petitioner must overcome a presumption that the challenged action might be considered sound trial strategy. *Id.*

Nevertheless, the court must keep in mind that counsel's strategic decision to call a particular witness is based upon the scope of his pre-trial investigation. While "[d]efense attorneys do not have an absolute duty to investigate," *Goldsby v. United States*, 152 Fed. Appx. 431, 435 (6th Cir. 2005), the failure to investigate and interview promising witnesses constitutes negligence, not trial strategy. *See Workman v. Tate*, 957 F.2d 1339, 1345 (6th Cir.1992). Defense counsel "has a duty to make reasonable investigation or to make a reasonable decision that makes particular investigations unnecessary." *Strickland*, 466 U.S. at 691. "In judging the defense's investigation, as in applying *Strickland* generally, hindsight is discounted by pegging adequacy to counsel's perspective at the time investigative decisions are made, and by giving a heavy measure of deference to counsel's judgments." *Rompilla v. Beard*, 545 U.S. 374, 125 S. Ct. 2456, 2462 (2005).

### Coretta Conley

Petitioner contends that the victim "did not inform the police that she knew the [p]etitioner or his family, and that [p]etitioner was the one that robbed her, instead she gave a general description of any middle age black male." Petitioner's Memorandum of Law ("Memo") at 21. Petitioner contends that the victim's testimony "would have been directly contradicted by Coretta [Conley] whom she claimed introduced her to [p]etitioner and his family. *Id.* Petitioner's contention is without merit.

Petitioner has submitted an affidavit from his niece, Coretta Lynn Anderson. Ms. Anderson does not identify herself as Coretta Conley. The court will assume, however, that Ms. Anderson and Ms. Conley are the same person. In the affidavit, Ms. Anderson stated that she was subpoenaed to testify at petitioner's trial on April 27, 1999. Anderson Affidavit, attached to Memo as Appx. F. Ms. Anderson was willing to testify that she was a classmate of the victim between the

14

ages of 6 and 14; that the victim visited  Anderson at her place of employment and told her about the robbery; that "to the best of my knowledge [the victim] has never met [petitioner] or could know that [petitioner] is my uncle," and that she "did not testify because [petitioner's counsel] told me not to." *Id.*

Contrary to petitioner's contention, the victim never testified that Ms. Conley introduced her to petitioner.  At the preliminary examination, the victim testified that she was acquainted with petitioner's family, stating that:

> I knew his niece [Coretta Conley] in elementary school, and I had known his daughter, I guess.  I had seen her before.

Prel. Exam. Trans. at 14-15. While the victim testified that she heard Ms. Conley talk about petitioner, she also testified that "I don't remember ever seeing [petitioner]" before the robbery. *Id.* at 14-15.  Furthermore, the victim's disputed testimony was given at the preliminary examination. The victim gave no testimony at the trial about attending school with Ms. Conley,  knowing petitioner's family, or meeting petitioner. There was no reason for counsel to call Ms. Conley as a witness at the trial, because the victim gave no testimony for her to rebut.  Accordingly, petitioner's ineffective assistance of counsel claim related to Ms. Conley should fail.

### Alfreda Green

Next, petitioner contends that his counsel never contacted Ms. Green. Memo at 22. Petitioner explained the significance of Ms. Green's testimony:

> [Ms.] Green's testimony would have aided [petitioner's] case tremendously. The prosecutor's theory of the case was that [p]etitioner had robbed the gas station somewhere around 9:20 p.m.  [Ms.] Green's testimony would have corroborated [petitioner's] testimony that he left her apartment around 9:00 p[.]m[.] on the date in question indicating that he was going to visit their mutual friend (Carolyn Sanders).  Wherefore, [p]etitioner could not have been in [Watervliet] at 9:20 p[.]m[.] committing a robbery.  Due to the [weather] condition, and [Watervliet] being some 30 miles away, it would have been impossible to obtain this [feat].

Memo at 24.

Petitioner's claim that he provided counsel with Ms. Green's address is unsupported. Petitioner refers the court to the first page of a letter from "Felony Defense, P.L.C.", dated March

5, 1999, which requests petitioner to provide the names, addresses and telephone numbers for witnesses. Counsel's letter states in pertinent part:

> I cannot emphasize to you the necessity of your providing me with names, addresses and phone numbers for witnesses (we do not need birth dates of witnesses). Please be aware that my office does not have a private investigator to track down witnesses. I must rely on you for this information. I will help wherever I can. If you do not have all of the information, please send me as much information as you can. List the witnesses as you know them, the best location you have for each witness, and what you think each witness will say and will testify to in support of your defense as to each case. We will meet to further discuss the information you provide to me.

*See* Appx. G attached to Memo.

While petitioner has provided the court with a copy of the first page of counsel's letter requesting information on witnesses, nothing in the record indicates that petitioner provided counsel with Ms. Green's address. Furthermore, petitioner had a full opportunity to inquire into his counsel's alleged ineffective assistance during the post-trial *Ginther* hearing, but did not address any of the issues related to the alleged failure to investigate Ms. Green. *See* Motion Trans. (1/24/2000) (docket no. 25). Petitioner provides no basis for his claim that counsel was ineffective for failing to call Ms. Green as a witness. Accordingly, this claim should be denied.

### Trial counsel was ineffective in failing to call and waiving the only disinterested alibi witness for the defense (Issue II. d.)

Next, petitioner contends that his trial counsel was ineffective for waiving his alibi witness, Ms. Sanders. Memo at 31-35. At the *Ginther* hearing, counsel testified that he intended to call Ms. Sanders as a witness, even though she could not remember the specific date that she was with petitioner. Motion Trans. (1/24/2000) at 14-15. He first spoke with her on April 14, 1999. *Id.* at 14. Counsel did not believe that Ms. Sanders would be a great alibi witness but agreed to present her because petitioner was emphatic that he wanted her called as a witness. *Id.* at 15. Counsel testified that Ms. Sanders "wasn't necessarily going to be a horrible witness," because "[s]he would verify at least [petitioner's] story that she was with him at some certain time, it's just that she couldn't tie the date together." *Id.* Counsel had spoken to Ms. Sanders on the telephone and she "said she didn't want to get involved." *Id.* at 17. Counsel described Ms. Sanders was "cooperative"

16

but "clearly reluctant" and "didn't tell me anything more than I needed." *Id.* at 34.   Counsel
concluded that the issuance of a material witness warrant was necessary to compel her attendance
at the trial. *Id.* at 16.

Counsel advised the prosecutor that Ms. Sanders was an alibi witness and requested
a subpoena.  Counsel's letter to the prosecutor states in pertinent part:

> My client is requesting a subpoena for the individual known as Carolyn
> (believed to be Washington and that said individual can be located at Harbor Towers,
> apartment 8th floor, left off elevator, first apartment to the right).
>
> Please be advised that while my information regarding the location of said
> alibi and the individual involved in said alibi are less than specific, please note that
> I have talked to this individual at the telephone number given, i.e., 616/925-2885.
> While she was reluctant to provide me with her last name or other information, she
> did confirm the alibi information on this case, and has agreed to come to court to
> testify.

Letter to prosecutor (April 14, 1999) attached to Memo as "Appendix I & J".

Counsel testified that when he spoke with Ms. Sanders a second time, while she was
in the holding cell before the trial, he decided not to call her as an alibi witness.  Motion Trans.
(1/24/2000) at 17-18, 36.  Counsel further testified that:

> When I talked to her in the holding cell, she would have destroyed our case.
> If she said in the courtroom what she told me, things would have gotten much worse.
> Assuming the jury believed her.  She was extremely angry that she had been arrested
> [as a material witness].  Extremely angry at [petitioner].  And then there was the
> matter of this letter, which she voluntarily gave the prosecutor.  And in my opinion
> this letter was as damaging as anything we had to face in this trial.

*Id.* at 36-37.

While petitioner's counsel did not call Ms. Sanders as an alibi witness, the prosecutor
did call her as a rebuttal witness.  Ms. Sanders testified that she was with petitioner on the evening
of January 12, 1999, that he had some money,  that they spent over $80.00 on crack cocaine, that
they got high, and that they might have had sex.   Trial Tr. I at 227-29, 232.  Sometime later,
petitioner phoned Ms. Sanders:

> Q:   He called you on the telephone?  What did he say to you on the telephone?
>
> A:   He told me the day we were together that day they said that he had done
>       something wrong.  I can't remember exactly what he said it was.  But he said

17

he couldn't had did it because he was with me at that time.

Q:      Did you remember that at that time?

A:      I remembered the day -- I remembered when we was together.  I can't tell you -- I can't even tell you what day it was.

*Id.* at 229.  Petitioner called her several times asking her to be a witness.  *Id.*  She would not commit to being a witness and "told him there might be a warrant out for me."  *Id.*

Then, petitioner sent Ms. Sanders a letter.  *Id.* at 230.  The prosecutor asked Ms. Sanders to read a portion of the letter:

Q:      And can you read us what that says in this letter?

A:      "I told them that the night that this happened we was together around  8:00 or 9:00 p.m.  I left around 2:30 or 3:00 a.m.  We watched TV and talked.  I told my lawyer we made love."

Q:      Do you remember any of that?

A:      Un-un (negative).

Q:      Further in the letter it talks about watching the PJs on television.  Do you?

A:      What's PJs ?  I remember seeing that too.

Q:      You remember seeing the PJs ?

A:      I thought he was talking about pajamas.  I don't know what PJs is.  I don't even watch PJs.

Q:      So that evening you do not remember reading -- watching any television --

A:      I don't have to remember.  I didn't watch TV.

Trial Trans. I at 233-34.

The letter was admitted into evidence as People's Exhibit No. 7.  Id. at 231-32.  The complete text of the letter was set forth in the government's appellate brief:

Hey Carolyn

What's up.  I cant tell you how much I appreciate you steping up and comeing to court for me.  You know one thing is our story has to be the same.  As I mention to you before I am not asking you to lie just tell the truth.  And I told them this.

I knew you in high school but I have not seen you in some years.  If you can recall I first met or ran into you in Nov. 98.  If they dont ask you have I been to prison dont tell them but I was just getting out when we first dated.  I told them I seen you off and on after that.  I told them that night that this happen we got together around 8 or 9 pm I left around 2:30 or 3: am we watch tv and talk I told my lawyer we made love.  I didn't say we were getting high actually they only want to know the time.  They will ask you How do you know what time it was.  I told them that once we got to your house and turn the tv on that cartoon the Pjs was on and it comes on at 8 or 8:30.  You know what kind of car I was in I'm sure that will come up to.  I dont know exactly what else may come up but I do know you and I times has to match or be close.  So try to keep them in mind.  I dont want this to sound like a bribe because it's not but I will repay you for your help even if its only takeing you out for a weekend in Chicago or somewhere.  Again I dont want to say to much here I never knew what they do with the mail once it leaves my hands.  So read between the lines.  Also my family will help you with anything you need to get ready or get their.  So if you need anything call on them.  Again my sister is Pat Barber xxx-xxxx if you need me or need to know anything call Pat have her call here for me to call home.  Hey I cant get high any more but I cant wait to get between your legs and others.

Love ya
Ricky Taylor

Government's Appellate Brief at 7 (docket no. 26) (telephone number omitted).

At the *Ginther* hearing, counsel testified that he spoke with petitioner about Ms.

Sanders' testimony and not calling her as a witness:

I'm quite sure I talked to [petitioner] about [Ms. Sanders' testimony] and told him, [p]lease don't make me call her, she's going to be a horrible witness, she's going to bring up all the stuff in the letter and emphasis [sic] that you tried to buy her testimony, etceteras, etceteras.  And I am quite certain we decided together not to call her as a witness.

Motion Trans. (1/24/2000) at 37.

The Michigan Court of Appeals agreed with petitioner's counsel that Ms. Sanders'

testimony was damaging:

The rebuttal witness, the person with whom defendant claimed to be at the time of the crime, undermined the credibility of defendant's alibi. She testified that she was

19

not sure on what date or at what time they were together, so she did not know whether they were together when the crime occurred. She contradicted a statement made by defendant in a letter to her regarding a television show he said they watched together, which was supposed to show that he was with her at the time the crime occurred. The witness also disputed other particulars of defendant's testimony concerning what transpired between them when they were together, again calling into doubt the truthfulness of defendant's alibi.

*People v. Taylor*, No. 200277, slip op. at 1.

Ms. Sanders did not aid petitioner's defense. On the contrary, her testimony and the letter damaged petitioner's credibility: she did not corroborate petitioner's chronology of January 12th, and she introduced evidence that petitioner arrived with money and purchased drugs. Petitioner's letter to Ms. Sanders appeared to be an attempt by petitioner to purchase favorable testimony from her. Given this testimony, counsel acted reasonably when he decided not to call Ms. Sanders as an alibi witness. Accordingly, petitioner's claim of ineffective assistance with respect to Ms. Sanders should be denied.

### Trial counsel was ineffective when he erroneously advised petitioner on a clear point of law and failed to suppress extremely prejudicial evidence (Issue II. e.)

Petitioner contends that his trial counsel should have moved to suppress the store's surveillance videotape that documented the crime. Memo at 36-41. Petitioner states that the prosecutor admitted the videotape to identify him as the perpetrator, but contends that "the videotape was so distorted, the only thing that could be seen was the perpetrator was a black male and he wore a coat similar to that of [petitioner]." *Id.* at 38. Petitioner concedes that the videotape "did depict the robbery," but contends that it was not material because "the grainy and fuzziness of the picture alter[ed] the face of the perpetrator." *Id.* at 38-39.

Petitioner admits that the videotape was relevant evidence under MRE 401, which defines "relevant evidence" as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Memo at 37. Here the tape showed the crime, and that the perpetrator was black, male, wore a coat, and that the coat was similar to petitioner's. Petitioner apparently

20

objects to the videotape as unduly prejudicial because the face of the perpetrator "could not be seen." *Id.* at 39. *See* MRE 403 (which provides that relevant evidence may be excluded "if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence"). Of course, no single piece of evidence has to prove the prosecutor's entire case.

Petitioner presents no basis for a motion to suppress the videotape. Petitioner claims that he is not the person depicted in the tape. Nevertheless, he admits that the videotape depicted the crime and does not claim that the tape was altered in any way. In short, counsel was not ineffective when he chose not to file a meritless motion to suppress. *See Chegwidden v. Kapture*, 92 Fed.Appx. 309, 311 (6th Cir. 2004) ( "[c]ounsel is not required to argue a frivolous or meritless motion"); *Lilly*, 988 F.2d at 786 ("[t]he Sixth Amendment does not require counsel . . . to press meritless issues before a court"). Accordingly, this claim for ineffective assistance should be denied.

### Trial counsel was ineffective when he failed to seek an evidentiary hearing prior to trial to challenge the victim's identification of petitioner on the basis of improper suggestions (Issue II. f.)

Next, petitioner contends that counsel should have challenged the victim's pre-trial identification procedure. Memo at 41-46. While it is difficult to decipher petitioner's claim, he apparently contends that the videotape "showing someone in similar garb as the petitioner was impermissibly suggestive" and that the victim should not have viewed it prior to the lineup in which she identified petitioner. *Id.* at 45.

The victim testified that she looked at the store's surveillance videotape the night of the robbery. Trial Trans. I at 143. She stated that the videotape pictures "weren't very clear." *Id.* Some time later, the victim identified petitioner in a line-up at the Berrrien County Jail. Trial Trans. at 124-25. She described her reaction at the line-up:

> Q:   Now, can you tell me what happened when you walked into that room and you saw the line-up?

21

> A:    I seen his eyes and his -- his lips and his face and I knew it was him.  I mean, that was the face out of all those faces that -- it was the only one that I saw because, I mean, you can't forget something like that.  Can't forget when it happens to you.

*Id.* at 124.  At the preliminary examination, the victim testified that she had seen the surveillance videotape, and that she had also identified petitioner as the robber.  Prelim. Exam Trans. (1/28/1999) at 6, 14.  At trial, the victim identified petitioner as the robber.  Trial Trans. I at 124-25.  She also identified petitioner's jacket as "about that same color" as the jacket worn by the robber.  *Id.* at 142.

At the *Ginther* hearing, counsel testified that both he and petitioner saw the videotape.  Motion Trans. (1/24/2000) at 20.  Counsel requested a lineup and was aware that the victim saw the videotape before she identified petitioner in the lineup.  *Id.* at 20-22.  When asked why he did not challenge "[the victim] seeing this videotape prior to the lineup," counsel testified as follows:

> A:    Sure.  [Petitioner] told me from the very beginning that that was not him on the videotape.  He -- He -- That was the whole basis of our defense.  That there was someone else in the community that maybe had some type of resemblance to him, but that was absolutely him -- not him on the videotape.  So for -- on that basis, her seeing that videotape, she wouldn't have been seeing [petitioner].  And I had to take him on his word for that.

*     *     *

> Q:    And so, essentially, your answer to the Court is, because your client told him -- told you it wasn't him, you didn't think it mattered, is that right?
>
> A:    Yes.

*     *     *

> Q:    And who did you believe was on the line -- on the videotape?
>
> A:    That's not for me to decide.  I mean, I take my client at his word, and he was emphatic to me that was not him on the videotape, therefore, I don't think I have a basis for an issue that she's being -- How can I go in front of a judge and say she's being shown a photograph or likeness of my client when our whole defense and position is, that's not my client on the videotape?  I don't know how to get in front of the judge on that.  And it certainly never occurred to me to do it.

*Id.* at 21-23.

At the *Ginther* hearing, petitioner testified that he asked counsel to quash the

22

videotape.  *Id.* at 48-49.  Petitioner explained:

> I wanted the video to be shown at first, but after I got a chance to see it, I could see that it was just a blurred face -- a blurred spot -- black spot for a man's face, blurred gray hair, and the suspect and I had a coat similar.  And to me that was just suggestive of who it could be 'cause you couldn't see who the person was.  And on those grounds, I didn't want the video admitted.

*Id.* at 50.

At the *Ginther* hearing, petitioner's appellate counsel argued that trial counsel was ineffective because he had a legal ground to suppress the videotape.  *Id.* at 58.  The court inquired as to the basis for such a motion:

| | |
|---|---|
| The Court: | And the viewing of the videotape by the [victim] is prejudicial in what way? |
| Miss Blanchard: | She then saw a person -- It's just like seeing a photograph prior to viewing a live lineup. . . . |
| The Court: | . . . If you see a photograph of someone other than the defendant, how is that prejudicial to the defendant in the context of a one-picture show up followed by a lineup.  If you show a photograph of someone other than the defendant, how is that prejudicial to the defendant? |

*        *        *

| | |
|---|---|
| Miss Blanchard: | It's prejudicial in that this was an out-of-court viewing of the alleged complainant -- alleged suspect who was incarcerated at the time of the viewing of the videotape.  And so, it's evidence that should not have been shown to the [victim] without proper protections to the individual who was incarcerated at the time of the showing. |

*Id.* at 59-60

The prosecutor responded that "we have a videotape that shows what [the victim] saw," and that:

> It can only be prejudicial by assuming that it's the defendant in the videotape, in which case, you might as well argue her identification is tainted because she saw the robber in the first instance when she was robbed.  The videotape is really no different.  It's simply a recording of what happened.

*Id.* at 61-62.

The judge rejected petitioner's argument that his trial counsel was ineffective for

allowing the victim to view the videotape before she identified petitioner in the lineup:

> First, [petitioner] asked for the lineup.  That was probably because identification was crucial in this case.  It probably would have been ineffective not to ask for a lineup prior to the preliminary examination.  And, of course, the lineup is -- or, the viewing of the videotape is only prejudicial if indeed the person in the videotape is [petitioner].  And of course it was [petitioner's] assertion all along that he was not the person viewed in the videotape that was admitted.  So, for that reason, I don't believe [petitioner's] argument regarding a suppression of the lineup has any merit at all.

*Id.* at 65-66.

> The Michigan Court of Appeals addressed the issue as follows:

> Defendant asserts that police improperly allowed complainant, the cashier at the convenience store, to watch a videotape of the crime before she viewed the lineup at which she identified defendant. Specifically, defendant argues that defense counsel was ineffective for failing to object to the viewing. We disagree.

> If police showed complainant a photograph of defendant before the lineup, it would have impermissibly suggested that she identify defendant as the perpetrator of the crime. *People v. Gray*, 457 Mich. 107, 111; 577 NW2d 92 (1998). Here, however, complainant watched a videotape of the crime itself. Defendant maintained throughout trial that someone else committed the robbery. In fact, defendant requested the lineup because he thought complainant might identify the true assailant. Thus, it is unclear how complainant's review of the videotape could have prejudiced defendant, given his position that the videotape showed someone else committing the crime. Moreover, based on defendant's assertions about his alibi, defense counsel could have legitimately reasoned, as a matter of trial strategy, that complainant's review of the tape would help the defense by giving complainant a clearer picture of what the real assailant looked like. This view is supported by defense counsel's own assertion that, after viewing the tape himself, he felt comfortable with defendant's position that he was not the person shown on the tape. Accordingly, defense counsel's decision not to challenge the viewing was a matter of trial strategy which we will not second-guess on appeal. *People v. Henry*, 239 Mich.App 140, 148; 607 NW2d 767 (1999).

*People v. Taylor*, No. 200277, slip op. at 2.

> Petitioner's ineffective assistance of counsel claim arises from the alleged unduly

suggestive pre-trial identification.  "A conviction based on identification testimony following

pretrial identification violates the defendant's constitutional right to due process whenever the

pretrial identification procedure is so 'impermissibly suggestive as to give rise to a very substantial

likelihood of irreparable misidentification.'" *Thigpen v. Cory*, 804 F.2d 893, 895 (6th Cir. 1986),

*quoting Simmons v. United States*, 390 U.S. 377, 384 (1968). When reviewing a petitioner's claim

that an out-of-court identification violated his or her due process rights, the court's primary concern is with the reliability of the evidence. *See Manson v. Brathwaite*, 432 U.S. 98, 114 (1977); *Wilson v. Mitchell*, 250 F.3d 388, 397 (6th Cir. 2001).

This court applies a two-part inquiry in such cases. "First, the court evaluates the undue suggestiveness of the pre-identification encounters." *Thigpen*, 804 F.2d at 895. Second, if the identification procedures are found to be unduly suggestive, the Court turns to the central question, whether under the totality of the circumstances the identification was reliable even though the confrontation procedure was suggestive. *Wilson*, 250 F.3d at 397. The factors to be considered in evaluating the likelihood of misidentification include the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of the witness' prior description of the criminal, the level of certainty demonstrated by the witness at the confrontation, and the length of time between the crime and the confrontation. *Neil v. Biggers*, 409 U.S. 188, 199-200 (1972); *Wilson*, 250 F.3d at 397.

Here, petitioner contends that the witness identification was unduly suggestive because (1) the victim should not have viewed the surveillance videotape prior to the lineup in which she identified petitioner, (2) the robber could not be identified by the surveillance videotape, and (3) the videotape showed someone in similar garb (i.e., a similar coat) as him robbing the Pri-Mart. Memo at 43-45. Petitioner's contentions are clearly without merit.

First, petitioner gives no authority for his contention that the victim should not have viewed the videotape before the line-up. The videotape was not prepared as part of the government's pre-trial identification procedure. It was not shown to the victim as a purported picture of petitioner. Rather, the videotape was evidence depicting the crime. Such evidence speaks for itself. Second, it is undisputed that the tape was not very clear. Nothing in the record suggests that the government enhanced the videotape to make it clearer or to make the robber appear to look like petitioner. Third, the fact that petitioner's coat was similar to the coat worn by the robber does not make the victim's identification unduly suggestive. The victim testified that she identified petitioner by remembering his face and physical build. Furthermore, petitioner presents no evidence suggesting that he was the only person in the line-up wearing a coat.

26

Counsel's strategy was consistent with petitioner's claim that the videotape depicted another person. The court agrees with the state trial judge's reasoning and conclusion that petitioner suffered no prejudice from this viewing. The Michigan Court of Appeals reasonably characterized counsel's decision not to challenge the victim's viewing of the videotape as a matter of trial strategy. The Michigan Court of Appeals' resolution of the issue was neither contrary to, or an unreasonable application of, clearly established federal law as determined by the Supreme Court; nor was the decision based on an unreasonable determination of the facts in light of the evidence presented. 28 U.S.C. § 2254(d). Accordingly, petitioner is not entitled to habeas relief on this claim.

### C.   Petitioner was denied his federal constitutional rights when the proposed alibi witness for the defense was allowed to testify before the jury in state issue clothing (Issue III)

Petitioner contends that his constitutional rights were violated when Ms. Sanders testified in jail clothing. Memo at 47-51. Petitioner does not contend that Ms. Sanders was shackled, but simply refers to her appearance in "jail garb" or "jail clothes." *Id.* at 47. Petitioner cites no authority to support his constitutional claim, and admits that it "may be one of first impression." *Id.* The Michigan Court of Appeals did not address this issue.

Petitioner's claim is without merit. "The inference to be drawn from prison clothing is that the witnesses were in prison, a fact that is not inadmissible." *United States v. Adams*, 1 F.3d 1566, 1584 (11th Cir. 1993). While a criminal defendant's appearance at trial in prison clothes may implicate his due process right to the presumption of innocence, the tactical decision to present witnesses in prison clothing does not prejudice the defense. *Johnson v. Spalding*, 510 F.Supp. 164, 171 (E.D. Wash. 1981). "The potential harm of shackles--that they make the jury think the witnesses are dangerous or violent--is not present when a witness merely wears prison clothing." *Woods v. Thieret*, 5 F.3d 244, 250 (7th Cir. 1993). *Cf. Cook v. Beto*, 425 F.2d 1066, 1067 (5th Cir. 1970) (the appearance of a co-defendant in jail clothing, to allow witnesses to identify him as one of the men who committed the robbery with the defendant, did not constitute grounds for federal habeas relief). Accordingly, there is no basis for federal habeas relief on this claim.

D. **Petitioner was denied his federal constitutional rights "when the trial court permitted the prosecution to adduce rebuttal evidence which was not rebuttal evidence" (Issue IV)**

Petitioner contends that the prosecution's rebuttal evidence, in the form of Ms. Sanders' testimony, was not rebuttal evidence because it did not respond to petitioner's theory presented through his testimony.  Memo at 54.  Petitioner contends that this use of Ms. Sanders' testimony violated his Fourteenth Amendment right to due process.  *Id.* at 52.

The Michigan Court of Appeals addressed petitioner's claim as follows:

> Defendant contends that he received ineffective assistance of counsel because improper rebuttal evidence regarding his alibi was introduced without objection. He argues that the "rebuttal" evidence did not rebut his alibi, but rather impeached him improperly through evidence of collateral bad acts, such as drug use and prostitution. Defendant failed to preserve this issue for appeal, because no objection to this witness was made at trial, and his ineffective assistance of counsel claim is not set out as a question for appeal as required by MCR 7.212(C)(5). *People v. Miller*, 238 Mich.App 168, 172; 604 NW2d 781 (1999).  Moreover, this ground for appeal lacks merit. The rebuttal witness, the person with whom defendant claimed to be at the time of the crime, undermined the credibility of defendant's alibi. She testified that she was not sure on what date or at what time they were together, so she did not know whether they were together when the crime occurred. She contradicted a statement made by defendant in a letter to her regarding a television show he said they watched together, which was supposed to show that he was with her at the time the crime occurred. The witness also disputed other particulars of defendant's testimony concerning what transpired between them when they were together, again calling into doubt the truthfulness of defendant's alibi. This rebuttal testimony, which undermined the evidence introduced by defendant, is clearly admissible. *People v. Figgures*, 451 Mich. 390, 399; 547 NW2d 673 (1996). Defendant, not the rebuttal witness, introduced the evidence of his collateral bad acts; the rebuttal witness contradicted his testimony concerning those acts only where she denied that they occurred (denying that he used her services as a prostitute). The rebuttal witness confirmed defendant's testimony regarding drugs, and because defendant first raised the subject of drug use, he may not predicate his appeal on the introduction of this testimony by the prosecutor. Because there was no error, there is no basis for reversal on this unpreserved issue. *People v. Carines*, 460 Mich. 750, 753; 597 NW2d 130 (1999).

*Taylor,* No. 220277, slip op. at 1-2.

Federal habeas review is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States.  *Estelle v. McGuire*, 502 U.S. 62, 68 (1991). "Trial court errors in state procedure and/or evidentiary law do not rise to the level of federal constitutional claims warranting relief in a habeas action unless the error renders the proceeding so

fundamentally unfair as to deprive the petitioner of due process under the Fourteenth Amendment." *McAdoo v. Elo*, 365 F.3d 487, 494 (6th Cir. 2004).  *See, e.g., Bugh v. Mitchell*, 329 F.3d 496, 512 (6th Cir. 2003) (observing that "[w]hen an evidentiary ruling is so egregious that it results in a denial of fundamental fairness, it may violate due process and thus warrant habeas relief"). In determining whether an alleged trial error violated the constitution, the court must "evaluate whether the error 'had substantial and injurious effect or influence in determining the jury's verdict.'" *Clemmons*, 34 F.3d  at 357 *quoting Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993).   In short, petitioner must establish "actual prejudice" to warrant habeas relief. *Id.* at 357-358.

Here, the court concurs with the assessment of the Michigan Court of Appeals.  Ms. Sanders' testimony did not deny petitioner a fundamentally fair trial.  Petitioner chose to testify in his own defense.  He denied that he went to the Pri-Mart store in Watervliet on January 12, 1999.  Trial Trans. I at 205-06.  He testified that he arrived at Ms. Sanders' house between 8:00 and 9:00 p.m. and that he was with her until 2:30 and 3:00 the following morning. *Id.* at 207-08.  He testified that Ms. Sanders was a prostitute and that "money exchanged that night." *Id.* at 208.   Petitioner testified that he and Ms. Sanders used drugs and alcohol. *Id.* at 214.  He stated that Ms. Sanders "had lost some memory of what went on" and that he wrote a letter to her "which explained how I viewed the evening." *Id.* at 209.  Petitioner further testified that his "professional relationship" with Ms. Sanders had been going on for three or four months. *Id.* at 214.  The prosecutor was free to rebut this testimony if he could.

As an initial matter, the Michigan appellate courts found no error under Michigan law in allowing Ms. Sanders to testify as a rebuttal witness.  In the absence of an error at the trial court level, the court is hard pressed to find that admissible testimony denied petitioner a fundamentally fair trial.  Petitioner admitted that he arrived at Ms. Sanders' room at around 8:00 to 9:00 p.m. on January 12th, that she was a prostitute, that he paid her for services on  January 12, 1999, that she drank, that he used drugs, that she had "lost some memory" of the night's events and that he wrote her a letter to refresh her memory.  Ms. Sanders contradicted portions of petitioner's testimony.  Her

testimony regarding the letter indicated that the document was more than an attempt to refresh her memory.   In addition, Ms. Sanders testified that petitioner never paid her for sexual services, contradicting his testimony that he paid for sex that night and that he had a "professional relationship" with her for three or four months. Trial Trans. I at 239.   While Ms. Sanders' testimony was certainly damaging to petitioner's defense, that is not the test.   It was simply the nature of the evidence.   The admission of this rebuttal testimony did not deny petitioner a fundamentally fair trial.

The Michigan Court of Appeals' resolution of this issue was neither contrary to,  or an unreasonable application of, clearly established Federal law as determined by the Supreme Court; nor was the decision based on an unreasonable determination of the facts in light of the evidence presented.   28 U.S.C. § 2254(d).   Accordingly, petitioner is not entitled to habeas relief on this claim.

### E.   The prosecutor engaged in misconduct when he failed to exercise due diligence in producing a material "res gestae" witness at trial (Issue V. d.)

Next, petitioner contends that the prosecutor violated his federal constitutional rights by engaging in prosecutorial misconduct and violating Michigan's res gestae witness statute, M.C.L. § 767.40a.   Petition at 66-67.   Specifically, petitioner claims that the prosecutor failed to locate, identify and produce a Hispanic man, who entered the Pri-Mart at or about the time that the robber fled the store.   *Id.* at 66-68.   Although petitioner raised this issue in his supplemental brief, the Michigan Court of Appeals did not address it.

Prosecutorial misconduct must be so egregious as to deny petitioner a fundamentally fair trial before habeas corpus relief becomes available. *Donnelly v. DeChristoforo*, 416 U.S. 637, 643-45 (1974); *Hutchison v. Bell*, 303 F.3d 720, 750 (6th Cir. 2002).   "When a petitioner makes a claim of prosecutorial misconduct, 'the touchstone of due process analysis . . . is the fairness of the trial, not the culpability of the prosecutor.'" *Serra v. Michigan Dep't of Corr.*, 4 F.3d 1348, 1355 (6th Cir.1993) (*quoting Smith v. Phillips*, 455 U.S. 209, 219 (1982)).

30

The factual background for this claim appears in the testimony of Michigan State Police Troopers Blake Dilley and Gregory Stormzand. Trooper Dilley testified that the victim reported seeing a white pickup truck in the parking lot during the robbery and that a Hispanic man left the truck and entered the store after the robbery. Trial Trans. I at 174-75. The Hispanic man was on the store's videotape, but the authorities were not able to identify or interview him. *Id.* at 175. Trooper Dilley asked the victim, the store manager and several other people if the Hispanic man was a regular customer, but no one could identify him. *Id.* at 175-76. Trooper Dilley also testified that the vehicle's license plate could not be seen on the videotape. *Id.* at 176. Trooper Gregory Stormzand testified that he viewed the videotape and described the Hispanic individual as about 18 to 23 years of age, black hair and medium build. *Id.* at 184. Trooper Stormzand testified that the victim could not get a license plate number for the man's truck and that no one in the store knew of him prior to the robbery. *Id.* at 184-85. Trooper Stormzand stated that "we didn't know how to contact him." *Id.* at 185.

Petitioner has not shown that the prosecutor's actions denied him a fundamentally fair trial. Contrary to petitioner's assertion, the prosecutor did not violate a statutory duty to produce this witness under M.C.L. § 767.40a. The statute, which was amended in 1986, "replaced the prosecutor's duty to produce res gestae witnesses with 'an obligation to provide notice of known witnesses and reasonable assistance to locate witnesses on defendant's request.'" *People v. Perez*, 469 Mich. 415, 418-19, 670 N.W.2d 655 (2003). Petitioner's prosecutorial misconduct argument is based upon Michigan appellate opinions that pre-date the 1986 amendment of M.C.L. § 767.40a. In light of the statutory amendment, these pre-1986 appellate opinions are of questionable authority at best. In addition, petitioner has identified no federal constitutional provision requiring a prosecutor to locate, identify and produce res gestae witnesses. *See generally, United States v. Valenzuela-Bernal*, 458 U.S. 858, 872-73 (1982) ("an absence of fairness is not made out by the Government's deportation of the witnesses in this case unless there is some explanation of how their testimony would have been favorable and material"). Furthermore, it is difficult for petitioner to

31

demonstrate that he was prejudiced by the prosecutor's actions.  The jury knew of the existence of the missing witness and was aware of the government's unsuccessful attempts to locate him.  Under these circumstances, petitioner cannot complain that he was denied a fair trial.

### F.    The trial court permitted the jury to view the videotape of the crime without proper authentication (Issue VI)

Next, petitioner contends that he was deprived of due process and a fair trial under the Fourteenth Amendment when the trial court permitted the jury to view the videotape of the crime without proper authentication.  Petition at 70.  The Michigan Court of Appeals addressed this issue as follows:

> Finally, we disagree with defendant's assertion that the prosecutor failed to lay a proper foundation before showing the convenience store videotape to the jury. The store manager and the state trooper in charge of the robbery investigation established that the tape was the same one taken from the store video camera just after the crime occurred. Further, the investigating officer testified that he watched the videotape and saw the robbery and the events just before and after the crime. This testimony satisfied MRE 901(a) which requires "evidence sufficient to support a finding that the matter in question is what its proponent claims." *People v. Berkey*, 437 Mich. 40, 50; 467 NW2d 6 (1991). Accordingly, the videotape was properly admitted as evidence.

*Taylor,* No. 220277 at 2.

Petitioner raises another issue of state law.  As the court previously discussed, questions of state law are not cognizable on habeas review unless the state court committed a procedural or evidentiary error that rendered the petitioner's trial fundamentally unfair.  *See McAdoo*, 365 F.3d at 494. Here, the Michigan Court of Appeals found that the trial testimony satisfied the evidentiary rule requiring authentication or identification.  *See* MRE 901(a).  While petitioner may disagree with the Michigan courts, this is the law which is applicable to his conviction.  The United States Supreme Court "repeatedly has held that the state courts are the ultimate expositors of state law" in federal habeas proceedings. *Mullaney v. Wilbur*, 421 U.S. 684, 691 (1975).  *See also*, *Estelle*, 502 U.S. at 67-68 ("it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions").  The trial court did not commit error in admitting the

videotape into evidence.   There is no federal due process issue for this court to consider. Accordingly, petitioner's claim should be denied.

> ### G.   Appellate counsel was ineffective (Issue VII)

Finally, petitioner contends that his appellate counsel was ineffective for failing to raise several meritorious claims of error  on his direct appeal of right.  As the court discussed in § III. A., *supra*, petitioner has made nothing more than a bald assertion that his appellate counsel was ineffective. Conclusory allegations are insufficient to establish ineffective assistance of counsel. *Wilson*, 962 F.2d at 997;  *Lawson*, 947 F.2d at 853. Accordingly, petitioner's claim for ineffective assistance of appellate counsel should be denied.

> ### IV.   Recommendation

I respectfully recommend that petitioner's habeas petition be **DENIED**.  Rule 8, Rules Governing § 2254 Cases in the United States District Courts.


Dated:  October 4, 2006                     /s/ Hugh W. Brenneman, Jr.
                                            Hugh W. Brenneman, Jr.
                                            United States Magistrate Judge



ANY OBJECTIONS to this Amended Report and Recommendation must be served and filed with the Clerk of the Court within ten (10) days after service of the report.  All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b).   Failure to serve and file written objections within the specified time waives the right to appeal the District Court's order. *Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).